I'll be the timekeeper. It's 10 minutes aside. Mr. Stutzman, you go first, and if you'd like to reserve some time, you let us know up front. And I have to say that I will be paying attention to the clock, but we'll make sure both sides get to say what they need to say. So, when you're ready, Mr. Stutzman. Thank you, Your Honor. May it please the Court, I would like to reserve three minutes. I am occurring today, this is Eli Stutzman occurring today, on behalf of the plaintiff appellate, Roderich Bott. And I believe there are two threshold issues to discuss first, the first of which I hope doesn't take as much time. The first issue is whose knowledge is sufficient to trigger the running of the statute of limitations. And as I believe the district court judge correctly decided in the end, it was knowledge that Mr. Bott possessed, as he was the only other member, and he was the only member that wouldn't be characterized as a wrongdoer under the allegations of the complaint. And the point of that is if the wrongdoer, under the allegations of the complaint, accumulates knowledge that's imputed to the LLC, then the statute would run before anybody that would act on behalf of the LLC would possess sufficient knowledge. Yes, and as I recall, Judge Mossman said if he were to hold otherwise, I think his word was that would be weird. Yes, that was his word. And he was ruling from the bench, and he worked through that, and I believe his ultimate conclusion was that the knowledge of Mr. Bott, the only other member, was the knowledge that was relevant. Yes, now Mr. Judge, this is Judge Fletcher. It seems to me that the harder question for you, of course, is what was the state of Mr. Bott's knowledge, either knew or should have known, and when was that knowledge acquired? Yes, Your Honor, and I agree. On this particular record, what's interesting, if you look at the timeline, it's an older case, but the relevant time is very, very short. This lawsuit, the underlying lawsuit, was initiated in December of 2011, and the relevant time runs only five months to May of 2012. And the reason that is true is that the parties on this record agree there was a bankruptcy filing, and the bankruptcy filing working backwards told the running of the statute of limitations until May 1 of 2012. And so we have a five-month period from December through May that's relevant, and as I pointed out in my briefing, and particularly footnote one, in this particular case, there's no evidence in this record that Mr. Bott was even aware that Mr. Edelson or the Markowitz defendants had been retained. It's true that in the complaint, relevant dates are alleged, but that appears to be after acquired knowledge. Counsel, this is Judge Ivey. So there is a letter from July 24th, which would be outside of that five-month period, to Mr. Edelson. When did counsel become aware that Edelson was involved in the case? Well, the July 24th letter is 2012. It's a couple months after. I'm not being sure when counsel would have been aware. It's outside of the period, but it's very, very apparent by July of 2012 that counsel for Mr. Bott knows a great deal and is already accusing counsel for the LLC of conflict of interest. And there was a hearing on March 27th of 2012. I'm looking at ER pages 273 and 274, where those allegations appear to have been raised in the, I believe this is the State Court proceeding. So there was already a good deal that was in the record before May 1st of 2012. You've got a hearing in March in which you're accusing them of conflict of interest. Well, the question was raised, but it was raised very politely, and it wasn't met with any information that disclosed anything. For example, if you look at the letter in July of 2012, which is after the statute would have been told, it's a very polite inquiry. The letter reads in significant part, quote, I am concerned that you are not acting impartially as the LLC's counsel, equally evaluating and considering proposals about the LLC's future from my client, Mr. Bott, who is the LLC's majority owner, and Mr. Prentice, the LLC's minority owner. And I read that as an expression of concern and ask for consideration and perhaps explanation, but not of any knowledge. There's quite a bit of detail, counsel, in that letter. It's hard to understand how the LLC's lawyer could believe it is in the LLC's interest to back Mr. Prentice, the owner who had led the company into technical bankruptcy. Later on towards the end, I question your judgment and impartiality in this matter. And says it will be challenging, but I think we're left, I mean, first of all, we're on summary judgment. I think we're drawing inferences and conclusions that's not supported by the record or permissible under the standard. I don't read these inquiries and these questions as showing anything other than a concern and asking for consideration. Mr. Bott is very clear that in his statement of what he learned and when he learned it and when he drew these conclusions, but that letter is in July. The statute was told almost two and a half months earlier, and the defendants have the burden here. The record is sorely underdeveloped on the pivotal issues. And I don't think on this record they can make the claim they need to make, and they're certainly not entitled to the inferences. But note one in my brief I think is very important to our case only because of the amount of time that was available for Mr. Bott to have learned such important information. Wasn't the purpose of the March hearing to disqualify counsel? It was not, and that's an unfortunate mischaracterization in this record. If you go back and read that part of the record, which I quote in the briefing, of course, the purpose of that was in this two-member LLC, the purpose of that hearing was to bring somebody else independent. And it was because Mr. Prentiss was the primary manager, and it did not require the exclusion or termination of any of the existing counsel. It just required that somebody else be there besides Mr. Prentiss running this LLC for the purpose of the litigation. And the characterization that it was to disqualify them and replace them is much more than the motion and the memorandum suggest. The motion and the memorandum is explaining Mr. Prentiss's key role in running the LLC and now in managing the litigation where there is a concern that the LLC has separate interests and different interests. So what was the result of the March 12th hearing, March 27th hearing, 2012? There was an examiner appointed. It appears from the record that it was for forensic accounting. You'll find the motion at the excerpt of record at 213 to pages 218 and the memo from 219 to 229 in the excerpt of record. And I would just conclude, I'm being mindful of time, but I would just conclude that it was a very short window of time. And the record is very underdeveloped and the burden is on the defendants. And if the record's inadequate, they're certainly not entitled to inferences to fill the gaps. Okay. Let's hear from the other side. We took you a little bit past your seven minutes, but you sought to reserve three. We'll make sure you get three. This is your opener for your rebuttal time. May it please the court, Dan Kepler, on behalf of the appellees, Mr. Edelson, the Markowitz Law Firm, and Mr. McGaughy, I would posit that the record is actually overwhelming, that from the very start of this litigation, Mr. Bott was fully aware of the adversity and the misalignment that he claims in this case. And in fact, he testified to that in a deposition in the underlying case. And he was speaking in ER 263 to 268, and he was referring to what he thought when this litigation was filed. And he believed that essentially the LLC's lawyers were taking the wrong side. And that's confirmed in his interrogatory answers. And again, counsel claims the record isn't developed, but we propounded interrogatories in this case. And he confirmed that this adversity is part of what the gist of his claim is. And it's just overwhelming that from the early events in the litigation, Mr. Bott, if he didn't know for sure, he and his counsel certainly should have known about the adversity of Mr. McGaughy and the Markowitz firm. And let me just address this little issue that counsel relegates to a footnote on what the firm knew. For sure, the firm filed a notice of appearance in the case in April of 2012. And like probably every set of rules of civil procedure, Oregon Rule of Civil Procedure 9 required the defendants to serve everybody with the notice. And this is raised for the first time in a reply brief. It was not raised below. And in fact, in the argument below, counsel for Mr. Bott said that they learned of the representation in February. And we actually corrected that and said it was April. But it was not raised below, and it could have easily been added to the record if that was an issue about whether they actually got service. We could have pulled the archived file. But that was discussed below. It was not raised below, and I don't think it's fair to raise that as some sort of problem with the record. This is Jeff Fletcher. I've got a slightly different question. I'm not sure whether it relates to the statute of limitations questions, although it might. What in the world were your clients or were the lawyers thinking? The conflict seems very obvious. They were in the end disqualified. What were they thinking as they were doing this? Well, Your Honor, they were hired by the management of the firm, of the LLC, for the purpose of filing this proceeding. And a judgment had been made. This was under the actual language of the LLC agreement. The management of the LLC was in the hands of Mr. Prentice and his management team. And the management team and counsel had made the decision that that provision permitted them to proceed in this way, to bring this action to expel Mr. Bott. No, this is not with respect to expelling Mr. Bott. The question is the conflict of interest of the lawyers. They're trying to represent more than one interest, and it should have been obvious. Well, I think that the answer is that this is a chicken-and-egg problem. It's that who speaks on behalf of the LLC? And from all the documentation of the LLC, it appeared that Mr. Prentice and his management team spoke for the interest of the LLC because he was the managing member under the way this was set up. So it wasn't looked at as a conflict at that time. And I would point out that this went through bar proceedings, and they were completely cleared of this. And I think they were not able to challenge the state court ruling disqualifying them. They tried both as a mandamus and as a direct appeal. And we had some real concerns about whether that was really a correct ruling. The second question, and that is, this is a summary judgment, and that means that you've got to answer the question. Well, yes, there are inferences and so on. Why isn't this a jury question? As I said, usually statute of limitations is for the judge, but here the question is a factual one. At what point does Mr. Bott know enough that he's on notice? Right, and I agree that in many instances a statute of limitations question can be a jury question, but I think here the evidence is, first of all, there's no dispute about the underlying facts, about how this litigation unfolded and how Mr. Bott responded to the litigation. And so we don't think that the underlying facts supporting this are at all in dispute. And what our position is, is that anybody knew or should have known in the position of Mr. Bott, represented by counsel, that they were proceeding adversely to him, and he could have raised this claim. And we just think that not only is it a should-have-known problem, but they really did know this, and they expressed these concerns, and they didn't have to know the full extent of their harm in order to have the statute of limitations clock start ticking. Okay, okay. Also, I would add that we raised an alternative ground to affirm this case based on Oregon law, and I just wanted to – and this actually also sort of ties into the use of this joint interest agreement as part of the statute of limitations issue as well. And this is laid out in our brief, but our position is that the way that Oregon interprets a statute is sort of a very strict constructionist approach. It's very clear from the Joint Client Statute and from the – that the joint interest privilege that's contained within that statute doesn't create sort of joint representation. And I know there are decisions from other courts that are based on maybe the common law of those courts that can suggest that there is some sort of joint representation, but that is not clear from the plain text of the statute as would be interpreted under what we call the state versus gains analysis in Oregon statutory interpretation jurisprudence. So, counsel, this is Judge Bidey. I raised to Mr. Stetson the March – the transcript of the March hearing. I also raised the July 2012 letter, which is outside of the period but may reflect knowledge that we've had before. You've raised the deposition of Mr. Bott. What do you think is the single most conclusive piece of evidence that shows that Bott knew about the conflict? Well, I think both his deposition and his – I think probably his deposition testimony. And deposition was in when? It occurred later, but he was speaking about kind of what he knew at the time. But it occurred in connection with subsequent matters in the state court litigation. So what specifically do you have in mind that he said during the deposition that supports what you're just representing? Well, so what I have in mind is where he sort of said – and I think it's quoted in the brief where he said, you know, it was my understanding that this was going against, you know, it was going against me, but it should have been going for me. That sounds like everybody who's got a bad ruling is a trans-judge. Well, I understand that. But what it reflected is that he had an understanding of the adversity of – or what he viewed as a misalignment as of the filing. And actually, the other big piece of evidence is just how he responded with not only – he responded to the litigation very aggressively with a counterclaim against the company, to dissolve the company, and a counterclaim against President, and then the motion for preliminary injunction. So maybe in some ways you don't really have to infer much from the fact that people take a litigation position that's very aggressive, that responds aggressively to, you know, to the lawsuit. And, you know, it certainly reflects an understanding in Mr. Bott's frustration with how this was unfolding. Okay. Now, that brings us up more or less to ten minutes. Are there further questions from the bench? None from me. None from me. Okay. Thank you very much, Mr. Kepler. Mr. Tuchman, figuratively speaking, I just put three minutes on the clock. Thank you, Your Honor. First, the issue of adversity. The defendants in their briefing and on appeal – briefing below and on appeal – refer to adversity constantly. But in litigation like this initiated by Mr. Prentiss, adversity would always be present. And Mr. Bott was not a stranger. He was a majority owner and a member. But the way this action was initiated, adversity would be present. The fact of adversity is what makes it confusing, is what makes it a jury question. The fact of adversity does not help the defendants. It actually helps Mr. Bott's explanation of why this was perhaps confusing. And I think if you look at that July 24 letter, 2012 letter, with a fresh eye in this context, it's a genuine letter of concern. It appears to be written in a way to suggest to the corporate counsel that take a second look at this. We're puzzled by your actions. It's from a lawyer. It doesn't make allegations. I think that letter helps. But to the extent we're disputing how to read or interpret or weigh that letter, that's a question for a jury, not for us on appeal or for the court below on summary judgment. On the alternative ground that's been argued, Mr. Bott doesn't claim that the presence of a joint interest agreement is the problem. And if defendants can only prove that a joint interest agreement is permissible, they can win the appeal. That's not the issue at all. It's what happened under the joint interest agreement. For example, confident material that Mr. Prentice might have shared with the corporation that was then withheld from Mr. Bott, there's the violation. Do we know what's happening? No, we don't know what's happening. If we don't know that there is a joint interest that is being defended so flawlessly together, if you look at my reply brief at page 31, you'll see that I quote the affidavit of Mr. Bott's then lawyer, where she learns what's happening. And this is, of course, inside the statute of limitations after it's been told. That's at page 31 of my reply brief. The allegations of the complaint, half of them reference the joint interest agreement, but it's what was done under the joint interest agreement. In this particular case, it's arguable that one was not at all appropriate. But even if you were to recognize the nuances in this case as defense counsel and say, all right, we have some common interests, and there'll be some things that will be protected under a common interest agreement or joint interest agreement, you would have to be incredibly disciplined. You could not just unify the defense as happened here, as is explained, for example, at page 31 in the testimony that I quote. And that's what's so severe in this case. It's not as if the plaintiff had a slip and fall on the premises, and Mr. Prentiss is the owner, personally liable, and also the owner of a corporation. It's not that simple where the defense can just align against the plaintiff, not at all. It's just the opposite of the joint interest agreement. This brings you up to the end of your three minutes, but if you'd just like to sum up, I don't want to cut you off. I'm sorry. Thank you. The joint interest agreement is not in and of itself the problem. It's what happened under it. And on this record, that's been established. And I would just point to page 31 of my brief where I quote some of the testimony. Okay. Thank you. Any further questions from the bench? Not here. Okay. Thank you very much. And the case is now submitted, and now that that's been done, this is just a quick question to you, Mr. Chutzman. I hope you are feeling better. I thought you were ill. I hope you're feeling better now. Well, thank you, Your Honor. I was hesitant to thank the bench. I wasn't sure how to handle that. I very greatly appreciate the way that was handled. I was not expecting such a perfect accommodation, but thank you all so much. Well, it's the least we can do. Okay. The case of Bott v. Edelson, et al., now submitted for decision. Thank you very much. And you two lawyers can ring off, and the judges will stay on the line. Thank you, Your Honor. Thank you.
judges: W. Fletcher, Bybee, Burns